[No. 15491.   Department Two.   December 1, 1919.]

NATIONAL SURETY COMPANY, *substituted for Chicago Bonding & Surety Company, Appellant,* v. A. D. CAMPBELL *et al., Respondents.*[1]

DEPOSITARIES — DESIGNATION — ANNUAL APPOINTMENTS—STATUTES. The designation of a bank as county depositary was intended to continue indefinitely and is not limited to one year, by Rem. Code, § 5072, providing that each county treasurer "shall" annually and at such other times as he deems necessary designate a bank as a depositary for all public funds; since the word "shall" relates to the first designation, while the word "annually" must be read in connection with the words immediately following.

STATUTES (73)—CONSTRUCTION AS MANDATORY. Rem. Code, § 5072, providing that county treasurers "shall" annually designate a depositary, is not mandatory as to requiring annual appointments; the time for the performance of an act generally being directory, and depending on the spirit as well as the letter of the law.

INDEMNITY (4, 5)—SCOPE AND EXTENT OF LIABILITY—LIMIT AS TO TIME. An indemnity bond to protect a surety on a county depositary bond given by a bank is not limited to one year, where the depositary's term and bond were not limited to any definite term, and the indemnity bond agreed to save and hold the surety harmless from any and all liability in consequence of having executed the depositary bond.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered February 25, 1919, upon granting a nonsuit, dismissing an action on an indemnity bond.   Reversed.

*C. B. White* and *Donworth, Todd & Higgins* (*Hyman Zettler,* of counsel), for appellant.

*Troy & Sturdevant, Thomas M. Vance,* and *Bates & Peterson,* for respondents.

TOLMAN, J.—This is an action upon an indemnity bond given by the respondent A. D. Campbell to protect the surety on a depositary bond given by the

[1]Reported in 185 Pac. 602.

State Bank of Tenino to secure the deposit of public funds of Thurston county, under Rem. Code, § 5073. From a judgment of nonsuit in the trial court, the case is brought here on appeal.

The State Bank of Tenino, having been designated by the treasurer of Thurston county as a depositary for public funds, caused a bond to secure such deposits, executed by itself as principal and the Chicago Bonding & Surety Company as surety, dated June 15, 1913, to be approved and filed as required by law, and as part of the same transaction, the bonding company obtained an indemnity bond from respondent A. D. Campbell, who was a stockholder and director of the bank, the conditions of which are as follows:

"Now therefore, if the above bounden A. D. Campbell shall and does pay in advance the premium or charges of Fifty Dollars ($50), made by the company for executing said bond and continuing the same, and shall hold and keep harmless the company from and against any and all liability, loss, damages, costs, charges and expenses of whatever nature or kind which the company shall or may at any time sustain, incur, or be put to, or by reason or in consequence of the company having given and executed the said bond; also all costs and expenses which it may incur in investigating any claim made thereunder or in or about prosecuting or defending any action, suit or other proceedings which may be commenced or prosecuted against the State Bank of Tenino or against the company, upon the said bond or any wise in relation thereto; then this obligation to be void, otherwise it is to be and remain in full force and virtue."

Deposit of current funds was made by the treasurer in due course, and thereafter, in September 1914, the bank closed its doors, having upwards of .$12,000 of the public funds on deposit. The bonding company paid its proportion of the loss and brought this action

against respondents to recover the amount so paid, plus its costs and expenses incurred.

At the close of plaintiff's case in chief, a motion for nonsuit was interposed, and the error assigned upon the granting of this motion and the subsequent entry of a judgment for the defendants is the only one we find necessary to discuss.

The motion was granted upon the theory that the designation of the bank as a depositary and the depositary bond given were by law limited to a term of one year, and that therefore the respondents, as indemnitors, contracted in the light of this limitation, and the loss having occurred more than one year after the giving of the indemnity bond, the indemnitors were not bound to respond. The statute, Rem. Code, § 5072, reads as follows:

"Each county treasurer in this state shall on the first day of July, 1907, and annually on the second Monday in January thereafter, and at such other times as he may deem necessary, designate one or more banks in the state as depositary or depositaries of all public funds held and required to be kept by him as such treasurer, and such designation or designations shall be in writing, and the same shall be filed with the board of county commissioners of his county, and no county treasurer shall deposit any public money in banks except as herein provided."

It is argued that this statute is mandatory as to the designation being made annually, and that, upon such designation being made, the depositary becomes such for one year only, or until the second Monday of January following, when the statute required a new designation and a new bond. If this be the correct interpretation of the statute, then, under the rule laid down in *King County v. Ferry*, 5 Wash. 536, 32 Pac. 538, 34 Am. St. 880, 19 L. R. A. 500, and a long line of decisions of other states, mostly concerning bonds of

officials elected or appointed for a definite term, the judgment of the lower court was right. Our first inquiry must then be as to the meaning of the statute. The supreme court of Oregon, in construing a similar statute, said:

"However, a graver question arises when we take up the consideration whether the particular provision in thought is to be regarded as directory or mandatory. We think the true rule is expressed in the following language; 'When the particular provision of the statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of the statute are given with a view to the proper, orderly and prompt conduct of business merely, the provision may generally be regarded as directory.' *Hurford v. City of Omaha,* 4 Neb. 350. To the same effect we cite Sedgwick on Constitutional Law, p. 372; 36 Cyc. 1158. In *People v. Lake County,* 33 Cal. 487, a case of recognized similarity, the Supreme Court, speaking through Mr. Justice Rhodes, said: 'When a statute specifies the time at or within which an act is to be done, it is usually held to be directory, unless time is of the essence of the thing to be done, or the language of the act contains negative words, or shows that the designation of the time was intended as a limitation of power, authority, or right.' " *State ex rel. First Nat. Bank of Klamath Falls v. Siemens,* 68 Ore. 1, 133 Pac. 1173.

So in our statute, in the absence of language limiting the designation to the term of one year or requiring a complete re-designation each year, it seems plain that the legislature intended that any designation when made should continue indefinitely until the parties interested should take steps to terminate the relation. The use of the word "shall" rather than the word "may" in referring to the time when the designation is to be made does not evidence, we are convinced, a contrary intent. As was said by this court in *Clancy v. McElroy,* 30 Wash. 567, 70 Pac. 1095:

". . . it is a familiar rule of statutory construction that the spirit as well as the letter must be considered in determining whether its provisions are mandatory or directory. The words 'may' and 'shall' may be used according to the context and intent found in the statute, and are frequently construed interchangeably."

The word "shall" as here used relates rather to the act of designation in the first instance, and the use of the word "annually" should be read in connection with the words "and at such other times as he may deem necessary," as applying to new designations, and not as indicating a legislative intent that such designations should be for one year only and should cease to be effective at or before the time fixed for subsequent designations.

In a parallel case, the supreme court of Wisconsin said:

"No purpose could be served by arbitrarily requiring a renewal of such selection, contract, and bond at every annual meeting of the board, or at the meeting thereof in June, nor at any other particular time, and hence no such requirement was made. . . . In view of the contents of the section, and its purpose as therein expressed, we cannot hold that the word 'annually,' as used in the section, should be construed as a mandatory requirement that a new selection of a depositary, and a new contract with the same, must be made, and a new bond must be taken, at the expiration of every year." *Manitowoc County v. Truman*, 91 Wis. 1, 64 N. W. 307.

The depositary bond under consideration here should not be confused with the usual fidelity bond and other like instruments, which, in so many words, are limited to a specified term and recite that they are renewable for a further term by the payment of an annual premium; and the fact that the premium on the depositary bond was payable annually does not

make it a bond for one year. The bond ran to the county treasurer and contained no words of limitation; the premium was not payable by the treasurer; and, by the terms of the bond, he was advised that the surety company undertook to make good any default of the bank which might occur prior to the thirty-first day after notice should be served upon him of its election to terminate its liability; and if the premium were unpaid, or any other reason existed for such termination of liability, and notice was served upon him, he could protect himself by withdrawing the funds from the bank or requiring a new bond to be furnished within such thirty-day period. *Fidelity & Deposit Co. of Maryland v. Libby,* 72 Neb. 850, 101 N. W. 994.

If, then, the legislative intent was that a depositary once designated should continue to be such until by the withdrawal of the funds or some other act of the parties, or one of them, the relation should be terminated, and if the depositary bond did not provide otherwise, then, in the eyes of the law, the indemnity contract was entered into with that in view and the indemnitor, in broad language which requires no construction, undertook to ''hold and keep harmless the company from and against any and all loss . . . which the company shall or may sustain, incur, or be put to, or by reason or in consequence of the company having made and executed the said bond.''

Admitting the rule that in every doubtful case the presumption should be against a continuing guaranty, especially in the case of an uncompensated surety, yet where the indemnitor was a stockholder and director in the bank, was interested in seeing that it secured deposits of public funds, and knew that the purpose of the law was to require absolute security before the funds could be so deposited, which security must continue so long as the funds remained on deposit, and

in the light of that knowledge he contracted to indemnify the person providing that security, we can see no doubt of the indemnitor's intention.

"In the interpretation of indemnity contracts, the cardinal rule is that which applies to contracts generally, i. e., to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms. Where the general import of a contract is one of indemnity, it is the rule that all of the words used therein should be construed to be in harmony with, and subservient to, the general purpose of the bond. When applied, however, this rule should be in aid of the intention of the parties and should not be employed to defeat their purpose." 14 R. C. L. p. 46.

That he may have undertaken to pay the first year's premium on the depository bond is immaterial because he knew, or should have known, that the failure to pay any subsequent premium would not affect the county treasurer or his right to recover after default occurred.

The language of the depository bond shows that it was not written for a definite term with a provision for renewal, and the law does not limit the life of a depository bond to a definite term to be renewed or extended by a new designation; it follows therefore that the motion for a nonsuit should have been denied.

The judgment is reversed, with directions to proceed to a new trial.

HOLCOMB, C. J., MOUNT, BRIDGES, and FULLERTON, JJ., concur.